UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
XCELLENCE, INC. d/b/a/
XACT DATA DISCOVERY,

                      Plaintiff,

          -against-

ARKIN KAPLAN RICE LLP,

                      Defendant.
----------------------------------------------------------------X

**OPINION & ORDER**

10 Civ. 3304 (HB)

**Hon. HAROLD BAER, JR., U.S. District Judge:**

      Plaintiff Xcellence, Inc., doing business as Xact Data Discovery, ("Xact") filed a Complaint (09 Civ. 9680) against Defendant Arkin Kaplan Rice LLP ("Arkin") in November of 2009.  I dismissed that action without prejudice on December 31, 2009 because Xact's application to do business in New York had not been finalized, and therefore Xact could not avail itself of the New York courts.

      Xact re-filed this dispute on April 19, 2010 and the case was assigned to Judge Rakoff.  The Complaint alleges breach of contract, quantum meruit, and unjust enrichment.  Arkin's Answer raises seventeen affirmative defenses and four counterclaims — fraudulent inducement, fraud, aiding and abetting a breach of fiduciary duty, and a request for declaratory judgment.  On July 16, 2010 Xact moved to dismiss Arkin's counterclaims or in the alternative to strike impertinent and scandalous matters, and the matter was fully briefed on August 13, 2010.

      On August 23, 2010 the case was reassigned to me as a matter related to the previously dismissed case.  For the reasons that follow, Xact's motion to dismiss Arkin's counterclaims or in the alternative to strike impertinent and scandalous matters is GRANTED in part and DENIED in part.

## I.  FACTUAL BACKGROUND

      Xact, an electronic discovery outside vendor, alleges that Arkin, a law firm, has failed to pay invoices.  In the fall of 2008, Xact was retained by Arkin to process certain electronic data for production in connection with a legal dispute.  Answer ¶ 137.  Xact contends that the parties negotiated the rates to be charged, but that Arkin has refused to pay outstanding invoices in the amount of $467,695.34 after services had been rendered.

In September 2008, Daniel Feliciano ("Feliciano"), an account manager for Xact, contacted Chris O'Connor ("O'Connor"), a non-lawyer employee of Arkin. *Id.* ¶¶ 143–44. O'Connor had been an authorized contact on behalf of Arkin with respect to transactions with Xact in 2007 and 2008, but for much smaller invoices. *Id.* ¶ 143.

On September 30, 2008, O'Connor e-mailed Feliciano about potential new business but also informed Feliciano that "we don't have permission to proceed yet." *Id.* ¶ 145. In subsequent conversations O'Connor and Feliciano discussed the physical transfer of Backup Tapes to Xact and pricing, but Xact does not allege that O'Connor ever communicated to Feliciano that Xact should begin processing. *Id.* ¶¶ 148-59, 164-66.

On October 2, 2008, Feliciano e-mailed O'Connor a pricing schedule that included (1) "Pre EDD Processing" or "Culling" with a price range of between $100 and $350 per gigabyte, and (2) "EDD Processing for Review" or "TIFF Review" with a price range of between $1,150 and $1,600 per gigabyte. According to Arkin, the schedule, in conformity with industry standards, indicates that Xact would engage in a two step process: first, Xact would "cull" data to de-duplicate information, and second, Xact would process the de-duplicated data for "TIFF Review." *Id.* ¶ 160-62. This two-step process effectively reduces the amount of information to be processed via the more expensive "TIFF Review" stage by first identifying and excluding all duplicative data via the less expensive "culling" stage. According to Arkin, Xact subsequently confirmed that it would charge no more than $300 per gigabyte to cull or de-duplicate the data, and then process only the remaining data into "TIFF conversion" at $1,200 per gigabyte. *Id.* ¶ 167.

Arkin further alleges that Xact sent an invoice to Arkin purporting to apply the TIFF conversion rate to *all* data, including that data which had not been de-duplicated. *Id.* ¶ 174-76. After submitting a large invoice for the total charges, Xact sent a series of smaller invoices that Xact personnel believed would be more "palatable" to the client. *Id.* ¶ 182-84. Arkin alleges that Xact intended to mislead Arkin regarding the pricing schedule because it was "approaching insolvency or desperate for cash"[1]  (*Id.* ¶ 139) and then attempted to "disguise its fraudulently inflated invoices" by subdividing them. *Id.* ¶ 182-83.

---

[1] Arkin contends that it has a good faith basis for such insolvency allegations because Judge Scheindlin previously held that Xact had defaulted on a loan agreement in January 2008 and remained in default at the time of her opinion in January 2009, with Xact admitting that the plaintiff in that action might not receive payment until 2010. Def. Opp. at 2 n.1 (citing *Koury v. Xcellence, Inc.*, 2009 WL 94312, at *2 (S.D.N.Y. Jan. 13, 2009)). Xact contends that Judge Scheindlin did not hold anything, but rather was constructing the allegations against Xact on a motion to dismiss in a case brought by a "disgruntled" former business associate of plaintiff's. Pl. Reply at 1-2.

Xact filed its Complaint on April 20, 2010, alleging breach of contract, quantum meriut, and unjust enrichment. Arkin's Answer raises seventeen affirmative defenses and four counterclaims — fraudulent inducement, fraud, aiding and abetting a breach of fiduciary duty, and a request for declaratory judgment.

Xact contends that the counterclaims for fraudulent inducement, fraud, and aiding and abetting a breach of fiduciary duty do not state an injury nor do they seek relief beyond avoidance of liability to Xact on its claims for payment of the invoices. Xact asks this Court to treat them as defenses rather than counterclaims, thus relieving Xact of its obligation to respond. Arkin contends that it paid two invoices, Compl. ¶ 81, which constitute damages, and suffered consequential damages arising from the time spent reviewing the invoices and documents to understand and dispute the billing. Def. Mem. at 10-11. Arkin also contends that this is a case in which the assessment of attorney's fees is appropriate. *Id.* at 11. Xact now moves to dismiss Arkin's counterclaims or to strike "impertinent and scandalous matters."

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss brought under Rule 12(b)(6) will be granted if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal on this ground, a claimant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires application of "judicial experience and common sense." *Id.* at 1950. The court must draw all reasonable inferences in the non-movant's favor, *Roth v. Jennings*, 489 F.3d 499, 504 (2d Cir. 2007), but it need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted.

### B. Fraudulent Inducement and Fraud (Counterclaims I and II)

*1. Whether Arkin is prohibited from bringing counterclaims for fraudulent inducement and fraud*

Arkin's first counterclaim is that, to the extent this Court finds a contract existed between the parties, Xact fraudulently induced Arkin to enter into such contract by misrepresenting that it would apply its TIFF-conversion rate only to de-duplicated data when it in fact intended to apply the rate to non de-duplicated data as well.  Arkin's second counterclaim is that Xact engaged in fraud when it submitted an invoice for the work and then subdivided that invoice to allegedly overcharge for its work without being detected.  A threshold issues exists as to whether in an action for breach of contract a defendant may bring a counterclaim for fraudulent inducement or fraud by asserting that the plaintiff intended to breach the contract for which it seeks to hold the defendant liable.

Under New York law, "where a fraud claim 'is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie.'"  *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (quoting *McKerin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 234, 574 N.Y.S.2d 58, 59 (2d Dep't 1991)); *Telecom Intern. America Ltd. V. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) ("where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract") (citations and internal quotation marks omitted); *see also Metropolitan Transp. Auth. v. Triumph Advertising Productions,* 116 A.D.2d 526, 527, 497 N.Y.S.2d 673, 675 (1st Dep't 1986); *Maxim Group LLC v. Life Ptrs. Holdings, Inc.*, 690 F. Supp. 2d 293, 306-09 (S.D.N.Y. 2010); *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996).

In *Bridgestone/Firestone*, the plaintiff brought an action alleging, amongst other claims, breach of contract and fraud.  The Second Circuit stated that a plaintiff bringing a breach of contract action may not also allege fraud simply by asserting that the defendant intended to breach the contract, unless the plaintiff can: "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation

and unrecoverable as contract damages." *Bridgestone/Firestone, Inc.*, 98 F.3d at 20 (vacating the district court's finding of fraud). In *Maxim Group LLC*, the defendant alleged that the plaintiff fraudulently induced it into entering the contract by misrepresenting that plaintiff would take the actions described in the contract. 690 F. Supp. 2d at 306. This Court in that case denied summary judgment for defendant on its counterclaim for fraudulent inducement because it was "repetitive of its breach of contract claim." *Id.* at 306-09.

The present case is distinguishable from *Bridgestone/Firestone* and *Maxim Group LLC* because unlike in those cases where the same party alleges breach of contract and fraud, here Arkin is not alleging breach of contract in addition to its claims for fraudulent inducement and fraud, but rather denies that a contract ever existed. Put another way, while Xact alleges a breach of contract, Arkin argues only that if such a contract did in fact exist, Xact should be liable for fraudulent inducement and fraud. Neither *Bridgestone/Firestone, Inc.* nor *Maxim Group LLC* held that a defendant's recovery for a fraudulent inducement or fraud should be barred simply because the plaintiff seeks recovery in contract, and it would serve no equitable principles to hold otherwise. *See Bridgestone/Firestone, Inc.*, 98 F.3d at 20; *Maxim Group LLC*, 690 F. Supp. 2d at 306-09. Therefore, the rules barring double recovery laid out in *Bridgestone/Firestone* and *Maxim Group LLC* are not applicable here.

> 2. *Whether Arkin has properly plead fraudulent inducement to survive a motion to dismiss*

"Under New York law, in order to prove fraudulent inducement, a plaintiff must show: '(i) the defendant made a material false representation, (ii) the defendant intended to defraud the plaintiff thereby, (iii) the plaintiff reasonably relied upon the representation, and (iv) the plaintiff suffered damage as a result of such reliance.'" *Maxim Group*, 690 F.Supp.2d at 306. Additionally, Rule 9(b) requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under the heightened pleading standard of Rule 9(b), a plaintiff "'must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent'" *Watral v. Silvernails Farm LLC*, 51 Fed. Appx. 62, 65 (2d Cir. 2002) (quoting *Anatian* v. *Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)).

Arkin, as counterclaimant, pleads enough facts to state a claim for fraudulent inducement sufficient to withstand a motion to dismiss. Arkin alleges that the statements Feliciano made to O'Connor via e-mail, including a pricing schedule on October 2, 2008 and an "Xact Statement of Work" form on or around October 9, 2008, constitute material false representations because, according to Arkin, the statements identify a pricing structure that differs from what Xact actually intended to charge. Arkin's allegations of Xact's insolvency are sufficient at this stage to create an inference that Xact actually intended to charge Arkin at its higher TIFF-conversation rate for data that was not de-duplicated. Although there is a dispute as to whether a contract in fact existed between the parties, to the extent a contract did exist, reliance was not unreasonable.

Finally, Xact argues that Arkin does not sufficiently state an injury other than to seek relief from liability. Rule 9(b) does not require that claimants plead injury with particularity in fraud claims. *See Cohen v. Sudler & Hennesey LLC*, No. 10 Civ. 4321 (DLC), 2010 WL 3431534, at *2 n. 3 (S.D.N.Y. 2010) (particularity requirement does not apply to damages element) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)); *Varghese v. China Shenghuo Pharmaceutical Holding, Inc.*, 672 F. Supp. 2d 596, 611 (S.D.N.Y. 2009) (holding that the plaintiff's claim should not be dismissed where plaintiff did not allege specific facts of damages because "damages issues are not properly resolved at the motion to dismiss stage"). Arkin alleges that it was "damaged in an amount to be determined at trial" and specifies that it paid two invoices.[2] Answer ¶¶ 81, 202. This general pleading that Arkin suffered damages is sufficient to withstand a motion to dismiss.

   3.   *Whether Arkin has properly plead fraud to survive a motion to dismiss*

Under New York law, to prove fraud a claimant must show "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (internal quotation marks and citation omitted). The same Rule 9(b) pleading standard applies as described above.

Arkin fails to plead sufficient facts to state a claim for fraud under Rule 9(b). Arkin alleges that "[w]hen O'Connor began to question [Xact's] invoices, [Xact] began to engage in

---

[2] In Arkin's brief, it also mentions expenses incurred related to "time reviewing [Xact's] invoices and other documents to try to understand what [Xact] was billing for, and at what rates." (Def Brief 10-11). Although this Court relies on the sufficiency of the pleadings and not the parties' briefs, Xact's argument provides further support for this Court's finding that a general plea that Arkin suffered damages is sufficient.

6

evasive and deceitful behavior in order to overcharge for its work without being detected." Answer ¶ 207.  Other than the allegations that Xact misrepresented its pricing structure, which Arkin addresses in its fraudulent inducement counterclaim, Arkin identifies two possible bases to support its assertion that Xact engaged in fraud and deceit, neither of which comports with the heightened pleading standard required by Rule 9(b).  First, Arkin alleges that Xact did not disclose the estimated cost to process the work or the gigabyte size of the laptop or Backup Tapes, Answer ¶¶ 169, 170, but Arkin fails to plead with sufficient particularity how, assuming its truth, the omission is material.  Given that Arkin had a copy of the pricing schedule and possession of the Backup Tapes before giving them to Xact, and Arkin does not discuss any additional duties Xact had with respect to disclosure of such information, this Court will not presume the materiality of that omission in light of the requirements of Rule 9(b).  Second, Arkin alleges that Xact "engaged in a campaign to coerce [Arkin] or its client into paying these fraudulent invoices" by subdividing its initial invoice.  Answer ¶¶ 180, 182-83.  However, Arkin once again fails to plead with sufficient particularity how these subdivided invoices were in any way inaccurate or otherwise constituted a misrepresentation of the total charges.  Accordingly, Arkin's second counterclaim for fraud is dismissed.

### C. Aiding and Abetting a Breach of Fiduciary Duty (Counterclaim III)

Arkin's third counterclaim is that Xact aided and abetted O'Connor's breach of fiduciary duty that he owed as an employee to his employer, Arkin, when Xact entertained O'Connor in the hope that O'Connor would process the subdivided invoices without attracting the attention of management.  Answer ¶¶ 211-13.

Under New York law, a claim for aiding and abetting a breach of fiduciary duty requires showing: (1) breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) defendant knowingly induced or participated in the breach; and (3) plaintiff suffered damages as a result.  *In re Sharp Internat'l Corp. v. State Street Bank and Trust Company*, 403 F.3d 43, 49–50 (2d Cir. 2005).

The first issue here is whether O'Connor owed fiduciary duties to Arkin in his capacity as an employee.  There is conflicting case law in New York regarding whether a fiduciary duty exists between an employee and an employer. This Court has stated that, "[i]t is well settled that an employee owes a duty of good faith and loyalty to an employer *in the performance of the employee's duties*." *Slue v. New York University Medical Center*, 409 F.Supp.2d 349 (S.D.N.Y. 2006) (emphasis in original) (internal quotations and citations omitted).  An employee is

7

"prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." *CBS Corp. v. Dumsday*, 268 A.D.2d 350, 353 (2000) (quoting *Lamdin v. Broadway Surface Adv. Corp.*, 272 N.Y. 133, 138 (1936)). "Where it has been established that an employee breached his fiduciary duty by making improper use of the employer's time, facilities or proprietary secrets to create a competing business, third parties who have knowingly participated in the breach may be held accountable." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 205 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).

On the other hand, this Court has dismissed fiduciary duty claims, holding that "under New York law, an employer-employee relationship is not fiduciary in nature." *Lind v. Vanguard Offset Printers, Inc.*, 857 F. Supp. 1060, 1067 (S.D.N.Y. 1994); *see Kinsey v. Cendant Corp.*, 2004 W.L. 2591946 (S.D.N.Y. 2004); *Madera v. Metro. Life Ins. Co.*, 2002 W.L. 1453827 at *8 (S.D.N.Y. 2002) ("The employer-employee relationship is not fiduciary in nature").

Nevertheless, Arkin fails to sufficiently plead that O'Connor breached any duty that he may have owed to Arkin and therefore cannot establish that Xact knowingly induced or participated in such breach. Further, Arkin fails to allege whether O'Connor ever actually communicated authorization to Xact to begin working, nor does Arkin allege that O'Connor intended to hide from management the total costs of the invoices. Arkin alleges that Xact requested O'Connor's approval (Answer ¶ 156), but denies knowledge regarding whether Arkin gave such approval. *Id.* ¶ 52. Although Arkin alleges Xact sought to "divide O'Connor's loyalties by ingratiating themselves with him, by socializing with him, and by giving him gifts and doucers," (Answer ¶ 207) Arkin does not allege any facts to indicate that O'Connor ever acted disloyally. Absent sufficient allegations such as this, Arkin cannot make out a claim for aiding and abetting such a breach. Accordingly, this counterclaim shall be dismissed.

**D. Declaratory Judgment (Counterclaim IV)**

Arkin seeks a declaratory judgment that Xact breached the contract between the parties or that such contract is unenforceable. Declaratory relief may be appropriate to finalize a controversy or offer relief from uncertainty when a more effective remedy is lacking. *See Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003) (listing five factors to weigh when considering whether to issue a declaratory judgment). "[W]hen a counterclaim is merely a 'mirror image' of the complaint, the counterclaim serves no purpose and may be

dismissed." *Arista Records LLC v. Usenet.com., Inc.*, 2008 WL 4974823, at *3 (S.D.N.Y. Nov. 24, 2008) (citation omitted).

Arkin argues that declaratory judgment is proper because it has been haled into court twice by Xact. Arkin was only named in the lawsuit twice because Xact refiled this action after I dismissed the case when it became known that Xact had not received permission from the state to avail itself of the New York courts. Thus Arkin's appearance in this case twice stems from a procedural matter, and a final decision should alleviate any future uncertainty with respect to liability. Furthermore, the issues that Arkin seeks to resolve via a declaratory judgment are the same contract issues that Xact has plead in its complaint and which are presently before this Court. Put another way, declaratory relief is not the appropriate remedy, and this claim will be dismissed.

### E. Motion to strike

Xact moves to strike paragraphs 131 through 217 of the Answer – all the paragraphs pertaining to the counterclaims – for not conforming to the short and plain statement requirements of Rule 8(a) and for containing impertinent and scandalous matter in violation of Rule 12(f). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct…" Fed. R. Civ. P 8(d)(1). The Second Circuit has stated in a discussion of Rule 8:

> [t]he statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.

*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal citation omitted). To merit dismissal, a pleading must be "so long and so confusing as to 'overwhelm the defendants' ability to understand or to mount a defense.'" *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 269 (S.D.N.Y. 2007) (quoting *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004)). Additionally, Rule 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Xact alleges that paragraphs 131 through 217 of the Answer contain false accusations and that Arkin "believes that it can needlessly, and without basis in fact, accuse, condemn, and

disparage." Pl. Mem. at 8. Xact points to the use of such phrases as "desperate and greedy vendor," "honey pot," and "unnecessarily hoggish approach" and to allegations that Xact was facing insolvency and had "plied" O'Connor with gifts and meals. *Id.* at 7-8.

Arkin responds that it is pleading with the detail that it is required to show under the *Iqbal-Twombly* standard. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 54 (2007). Arkin argues that the request to strike the entirety of the counterclaims is overly broad and too unspecific and that any motion to strike particular words or phrases — such as "hoggish" or "greedy" — should fail because these are "serious allegations" that are bear on the counterclaims and plaintiff's motives. Def. Mem. at 20-21.

Xact's contention that Arkin's allegations are untrue does not support grounds to strike. Arkin's allegations are sufficient, albeit far longer than necessary and to some extent unfortunate, but they do put Xact on notice of the claim and enable Xact to identify relevant material and respond.

### III. CONCLUSION

For the aforementioned reasons, Xact's motion to dismiss the first counterclaim is DENIED, and Xact's motion to dismiss the second, third and fourth counterclaims is GRANTED. Xact's motion to strike impertinent or scandalous matters is DENIED. Additionally, in accordance with the parties' request, the pretrial scheduling conference presently set for March 17, 2011 is hereby adjourned to Monday, March 21, 2011 at 10:00am in my Chambers.

SO ORDERED.

New York, New York
March 15, 2011

**HAROLD BAER, JR.**
**United States District Judge**

10